**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

**vs.**                                                           **3:24-CR-170**
                                                                          **(MAD)**

**PAUL GEER,**

                                        **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**OFFICE OF THE UNITED**                 **JESSICA CARBONE, AUSA**
**STATE ATTORNEY**                          **ADRIAN LAROCHELLE, AUSA**
100 South Clinton Street                       **MICHAEL GADARIAN, AUSA**
Syracuse, New York 13261
Attorneys for the Government


**OFFICE OF THE FEDERAL**               **LISA A. PEEBLES, FPD**
**PUBLIC DEFENDER**                        **ANNE L. LAFEX, AFPD**
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        On April 3, 2024, Defendant Paul Geer was indicted on three counts of coercion and

enticement in violation of 18 U.S.C. § 2422(a) and three counts of transportation with intent to

engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a).  *See* Dkt. No. 1.  On

January 22, 2025, the Government obtained a superseding indictment charging Defendant with

the same substantive offenses.  *See* Dkt. No. 71.  Trial is scheduled to commence on Wednesday,

February 19, 2025.  *See* Dkt. No. 64.  Presently before the Court are the Government's two motions *in limine* and Defendant's four motions *in limine*.

The Governments moves *in limine* for the following relief: (1) a ruling as to the admissibility and scope of evidence and testimony related to Defendant's alleged physical, emotional, and sexual abuse of V-1, V-2, V-3, and other students; (2) to preclude Defendant from offering evidence of witness's or victim's other sexual behavior or predisposition; (3) to preclude Defendant from offering evidence of a witness's prior instances of conduct; (4) to preclude Defendant from offering evidence of V-1 and V-3's prior misdemeanor criminal convictions; (5) to preclude Defendant from introducing evidence of V-3's tax debt; and (6) to permit the V-1, V-2, and V-3 to attend all of the trial if they wish.  *See* Dkt. Nos. 62, 85.

Defendant moves *in limine* for the following relief: (1) to preclude testimony of the Government's proffered expert, FBI Supervisory Special Agent Daniel O'Donnell or hold a *Daubert* hearing to determine the admissibility of his testimony; (2) to preclude testimony from Jim Murray concerning a purported admission made by Defendant; (3) to designate Liz Ianelli as a hostile witness; and (4) to preclude the Government from using the term "victim."  Dkt. Nos. 92, 93, 94, 95.

Both parties responded and replied to the motions.  *See* Dkt. Nos. 108, 109, 110.  For the reasons set forth below, the parties' motions are granted in part and denied in part.

## II. BACKGROUND

As alleged in the indictment, Defendant worked at Family Foundation School ("FFS") in Hancock, New York from 1992 to 2014.  *See* Dkt. No. 71 at ¶¶ 1, 6.  FFS operated as a school for children with psychological, emotional, and behavioral issues.  *See id.* at ¶ 1.  Defendant was employed as a music teacher, choral director, and "family leader."  *Id.* at ¶ 6.  Defendant, along

with other FFS leaders, would impose "sanctions" on students which included food deprivation, isolation, forced physical labor, blackout periods where a student could not speak to anyone, psychological abuse, and sexual abuse.  *See id.* at ¶¶ 9-10.

V-1, V-2, and V-3 were enrolled at FFS and were members of the choral program.  *See id.* at ¶¶ 2-4, 8.  The indictment alleges that in 1994, 2000, and 2001, while enrolled at FFS, Defendant knowingly coerced, enticed, and transported V-1, V-2, and V-3 for the purpose of engaging in illegal sexual activity.  *See id.* at ¶¶ 11-17.  The Government states in its trial brief that such sexual activity included "forcing students to perform oral sex on [Defendant], anally penetrating students with his penis, and having a male student use the student's penis to penetrate the [D]efendant's anus."  Dkt. No. 79 at 2.

## III. DISCUSSION

### A.    Motions *in Limine*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287).  Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case

unfolds." *Luce*, 469 U.S. at 41. The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion *in limine*. *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

## B.     Evidence of Other Acts Not Charged in the Indictment

The Government argues that Defendant's acts of sexual and other abuse against V-1, V-2, and V-3 as well as other FFS students is admissible to prove Defendant's guilt, propensity, as well as motive, intent, plan, and modus operandi. *See* Dkt. No. 62 at 1-2. The Government contends it must present evidence of Defendant's use of disciplinary sanctions on students to prove his guilt on Counts 1, 3, and 5 for knowingly persuading, inducing, enticing, or coercing three minor children to travel in interstate with the intent to engage in criminal sexual activity. *See id.* at 2. Specifically, as to other acts of sexual abuse, the Government argues that such evidence is permissible in sexual assault and child molestation cases such as this. *See id.* at 4.

In response, Defendant "does not generally contest the introduction of evidence" concerning physical, emotional, or sexual abuse against V-1, V-2, and V-3. Dkt. No. 91 at 1. Defendant reserves his right to make any specific objections to such evidence at the time of trial. *See id.* at 1 n.1. Defendant argues that all evidence of sexual abuse allegations from two FFS students not named in the indictment should be excluded. *See id.* Defendant contends that such evidence is not "inextricably intertwined" with the charged crimes, the offenses in the indictment are not a "sexual assault" as contemplated by Rule 413, and the evidence does not serve a non-propensity purpose. *Id.* at 1-4. Defendant also argues the Court should preclude the evidence concerning the two other FFS students under Rule 403 because it would be unfairly prejudicial and unnecessarily expand the length of trial. *See id.* at 4-5.

### *1. Applicable Rules of Civil Evidence*

Pursuant to Rule 413 of the Federal Rules of Evidence, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." FED. R. EVID. 413(a). "'[S]exual assault' means a crime under federal law or under state law . . . involving," *inter alia*, "any conduct prohibited by 18 U.S.C. chapter 109A," "contact, without consent, between any part of the defendant's body--or an object--and another person's genitals or anus," or "contact, without consent, between the defendant's genitals or anus and any part of another person's body." *Id.* 413(d)(1)-(3).

Rule 414 of the Federal Rules of Evidence provides in relevant part as follows: "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." FED. R. EVID. 414(a). For purposes of Rule 414, "child" is defined as "a person below the age of 14" and "'child molestation' means a crime under federal law or under state law . . . involving: (A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child; (B) any conduct prohibited by 18 U.S.C. chapter 110; (C) contact between any part of the defendant's body – or an object – and a child's genitals or anus; [and] (D) contact between the defendant's genitals or anus and any part of a child's body[.]" *Id.* 414(d)(1)-(2).

Rule 414 is designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that evidence admissible under these rules "is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects." 140 Cong. Rec. H8968-01, H899-H8992 (daily

ed., Aug. 21, 1994) (remarks by principal House sponsor, Rep. Molinari).  Congress recognized

and intended that this approach would make the admission of similar evidence in federal sex

offense cases the norm, and its exclusion the exception.  *See United States v. Schaffer*, 851 F.3d

166, 178 (2d Cir. 2017).  As such, while evidence of other acts of child molestation may be

prejudicial, even highly so, it is not automatically excluded for that reason.  Instead, the question

is whether the proffered evidence is unfairly prejudicial.  *See United States v. Davis*, 624 F.3d

508, 512 (2d Cir. 2010); *United States v. Larson*, 112 F.3d 600, 604-605 (2d Cir. 1997).  "Unfair

prejudice . . . means an undue tendency to suggest decision on an improper basis commonly,

though not necessarily, an emotional one."  *United States v. Levy*, 594 F. Supp. 2d 427, 440 n.6

(S.D.N.Y. 2009) (quotation omitted); *see also Davis*, 624 F.3d at 512.

As relevant to Rule 404(b), it "prohibits the admission of evidence of prior crimes,

wrongs, or acts 'to prove the defendant's propensity to commit the crime charged.'"  *United States

v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (quoting *United States v. Diaz,* 176 F.3d 52, 79 (2d Cir.

1999)) (other citation omitted); *see also* FED. R. EVID. 404(b)(1).  Direct evidence of a crime is

"not confined to that which directly establishes an element of the crime."  *United States v.

Gonzalez*, 110 F.3d 941, 942 (2d Cir. 1997).  As the Second Circuit has explained, "[t]he trial

court may admit evidence that does not directly establish an element of the offense charged[ ] in

order to provide background for the events alleged in the indictment."  *Id.*; *see also United States

v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991).  This evidence "may be admitted to show, for

example, the circumstances surrounding the events or to furnish an explanation of the

understanding or intent with which certain acts were performed."  *Gonzalez*, 110 F.3d at 942.

"The rule [also] does not bar admission if the evidence is used 'for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident.'" *Dupree*, 870 F.3d at 76 (quoting FED. R. EVID. 404(b)(2)).

Additionally, the Second Circuit has held that such evidence is admissible as direct evidence of a charged offense, and "is not considered other crimes evidence under Fed. R. Evid. 404(b)," where such acts "arose out of the same transaction or series of transactions as the charged offense, . . . is inextricably intertwined with the evidence regarding the charged offense, or . . . is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003); *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012).

The court must consider the following when ruling on the admissibility of evidence under Rule 404(b): whether "(1) it was offered for a proper purpose; (2) it was relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible prejudice; and (4) the trial court administered an appropriate limiting instruction." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (citing *Pitre*, 960 F.2d at 1119).

Other act evidence is, therefore, also subject to evaluation under Rule 403, which asks whether the probative value of such evidence is "substantially outweighed" by a danger of "unfair prejudice" or confusion. FED. R. EVID. 403. The Second Circuit has found admission appropriate where the other act evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged.'" *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)); *see also United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (quoting *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)). The mere fact that a jury may draw inferences from other act

evidence that are unhelpful to a defendant does not render it inadmissible. Indeed, "any proof highly probative of guilt is prejudicial to the interests of that defendant." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995). "The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *Id.* (quotation omitted).

### 2. Application to Two FFS Students Not Named in the Indictment

First, Defendant argues that the evidence concerning the two FFS students is not "inextricably intertwined" with the charged conduct. Dkt. No. 91 at 1. Defendant notes that neither student was enrolled at FFS during the same period of time as V-1, V-2, or V-3. *See id.* at 2. The five individuals were enrolled at FFS at follows: V-1 from 1993-1994, unnamed student from 1996-1999, V-2 from 2000-2001, V-3 from 2000-2003, and unnamed student from 2006-2007. *See id.* at 2 n.2.

The Court concludes that the conduct against the unnamed students is not "inextricably intertwined" with the charged conduct against V-1, V-2, and V-3. As Defendant states, the unnamed students were enrolled at different times and "[t]here is no piece of the alleged victims' stories that is missing" but for the unnamed students' testimony. *United States v. Kurland*, No. 20-CR-306, 2022 WL 2669897, *5 (E.D.N.Y. July 11, 2022), *aff'd*, No. 23-6755-CR, 2024 WL 5165547 (2d Cir. Dec. 19, 2024) (concluding that schemes involving "different parties and different types of transactions" are not admissible as "inextricably intertwined" because "the fact that evidence may be relevant to proving the charged crimes does not make it so 'inextricably intertwined' with them as to be outside the scope of Rule 404(b). The Government's story will still come into clear focus without it"). Courts have concluded that this type of evidence can be "inextricably intertwined" with charged conduct. *See United States v. Jefferys*, No. 18-CR-359,

2019 WL 5103822, *10 (E.D.N.Y. Oct. 11, 2019) ("The sexual assault evidence, though probative . . . is not a necessary element to prove the charged offenses given that the government represents that it may prove its case through other evidence, including the testimony of witnesses. The sexual assault evidence may also be omitted without leaving a significant conceptual void in the story . . . ."); *United States v. Kaiser*, 609 F.3d 556, 571 (2d Cir. 2010) ("We agree that the pre-April 2000 evidence was 'inextricably intertwined with the evidence regarding the charged offense'" because "'[i]t would have been impossible to intelligibly present a case about much of what went on after April of 2000 without starting at the beginning'") (quotations omitted).

Here, the evidence the Government intends to present concerning the two unnamed students is not very different from the conduct alleged in the indictment. However, because it occurred during different years and the Government's case is not missing a piece of the puzzle without the unnamed witness's testimony, the evidence is not "inextricably intertwined" under Rule 404(b).[1]

In the alternative, the Government argues that the evidence is admissible to prove coercion and enticement as charged in the indictment because Defendant is charged with "sexual assault" crimes which allows for admission of "any other sexual assault" under Rule 413. Dkt. No. 62 at 10. Defendant contends that "[n]either enticement (2242) nor transportation (2243) is a 'sexual assault' as defined by Rule 413(d), because neither is an offense prohibited by 18 U.S.C. chapter 109A and neither involves sexual contact." Dkt. No. 91 at 2.

---

[1] The Court notes that is determination as to whether the conduct is "inextricably intertwined" is a close call. Although the unnamed students did not attend FFS at the exact same time as V-1, V-2, or V-3, their years of attendance are extremely close and in succession of one another. *See* Dkt. No. 91 at 2 n.2.

Federal Rule of Evidence 413 states as follows: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." FED. R. EVID. 413(a). The Rule defines "sexual assault" as follows:

> In this rule and Rule 415, "sexual assault" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving:
>
>> (1) any conduct prohibited by 18 U.S.C. chapter 109A;
>>
>> (2) contact, without consent, between any part of the defendant's body--or an object--and another person's genitals or anus;
>>
>> (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body;
>>
>> (4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or
>>
>> (5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4).

FED. R. EVID. 413(d).

Defendant argues that the crimes charged against him do not meet this definition because the charged offenses "proscribe the defendant's enticing a minor to travel and transporting a minor with a prohibited mental state. A defendant commits both offenses even if he never engages the minor in prohibited sexual conduct." Dkt. No. 91 at 3.

Defendant is correct that neither 18 U.S.C. § 2422 nor § 2423 mention a "sexual assault" and neither statute is referenced in Rules 413 or 414. *See* Dkt. No. 91 at 3. However, both charged crimes prohibit an intent to engage in "any sexual activity." 18 U.S.C. §§ 2422(a), 2423(a). The superseding indictment alleges that Defendant imposed "sanctions" on V-1, V-2,

10

and V-3 including "[r]epeated sexual abuse, which included [Defendant] engaging in various forms of abusive and non-consensual sexual contact with a student, including, but not limited to, forced oral and anal penetration of the student." Dkt. No. 71 at ¶ 10.f. This constitutes an "accus[ation] of sexual assault" because it constitutes an allegation of "contact, without consent, between the defendant's genitals . . . and any part of another person's body." FED. R. EVID. 413(a), (d)(3).

Numerous courts have concluded that crimes alleged under 18 U.S.C. §§ 2422 and 2423 contemplate a "sexual assault" under Rule 413. *See United States v. Schaffer*, 2014 WL 1515799 (E.D.N.Y. Apr. 18, 2014) ("[O]ffenses under 18 U.S.C. § 2422 involving the enticement of a minor to engage in illegal sexual activity . . . fall within the realm of crimes involving nonconsensual sexual contact defined as 'sexual assault'"); *United States v. Wager*, 651 F. Supp. 3d 594, 601 (N.D.N.Y. 2023) ("Although intent to engage in the sexual act itself might not be necessary to sustain a conviction, it does not follow that prior assaults involving sexual contact with a minor are therefore *irrelevant* to the issue of intent under § 2422(b)"); *United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014) ("The focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a person who has engaged in the covered conduct is likely to engage in it again. Rule 413 uses statutory definitions to designate the covered conduct, but the focus is on the conduct itself rather than how the charges have been drafted").

Based on the foregoing, the Court concludes that Defendant has been accused of a crime constituting a sexual assault under Rule 413 such that "evidence that the defendant committed any

other sexual assault" is admissible under that Rule.[2]  The Second Circuit has agreed "a prosecutor may use evidence of prior sexual assaults precisely to show that a defendant has a pattern or propensity for committing sexual assault." *United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017).  Therefore, the Government is permitted to use other acts of sexual assault as evidence to demonstrate propensity.

Defendant argues that the evidence violates Rule 403's limitation on unduly prejudicial and needlessly cumulative evidence. *See* Dkt. No. 91 at 4-5.  Defendant contends that the evidence will unnecessarily lengthen trial, permit unfair inferences about Defendant's "earlier bad act . . . raising the odds that he did the later bad act now charged," and require defense counsel "to divert its attention from the indicted offenses and expend even more time and expense investigating the claims from two individuals whose identity the government has not yet disclosed, all within several months, while the government took nearly seven years to investigate and bring the instant charges." Dkt. No. 91 at 5.

The Government acknowledges Rule 403's limitation on evidence and contends that it "has proactively limited the number of witnesses who will offer evidence of the defendant's charged and uncharged sexual assaults of FFS students by calling only the three identified victims, . . . and two other FFS students . . . .  To the extent the government intends to call additional FFS students and faculty to testify, the testimony of those witnesses will also be limited to the defendant's prior abusive conduct . . . ." Dkt. No. 62 at 16.

---

[2] Defendant acknowledges that the Second Circuit has rejected the argument that "Rule 413 violates the Due Process Clause by allowing the introduction of prejudicial evidence that 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dkt. No. 91 at 3 (quotation omitted); *see United States v. Schaffer*, 851 F.3d 166, 181 (2d Cir. 2017).

The Second Circuit has rejected the argument that Rule 403 prohibits introduction of other sexual acts. *See Carroll v. Trump*, 124 F.4th 140, 170 (2d Cir. 2024). The Second Circuit explained that the court "appl[ies] Rules 413-415 in a manner that effectuates Congress's intent. . . . Congress intentionally did not restrict the timeframe within which the other sexual act must have occurred to be admissible under Rules 413-415." *Id.* "One of the original sponsors of the legislation proposing Rules 413-415 explained that 'evidence of other sex offenses by the defendant is often probative and properly admitted, *notwithstanding very substantial lapses of time in relation to the charged offense or offenses*.'" *Id.* (quoting 140 Cong. Rec. 23603 (1994) (remarks of Rep. Molinari)). Specifically, as to Rule 413, "Congress considered '[k]nowledge that the defendant has committed rapes on other occasions [to be] critical in assessing the relative plausibility of [sexual assault] claims and accurately deciding cases that would otherwise become unresolvable swearing matches.'" *United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017) (quoting *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998)). Likewise, "other act evidence [is] not unfairly prejudicial, [where] the incidents in question were 'no more sensational or disturbing' than the acts" alleged against the Defendant. *Carroll*, 124 F.4th at 171 (quoting *United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011)).

The Court agrees that evidence presented by two unnamed students concerning Defendant's alleged sexual abuse is not so unfairly prejudicial or needlessly cumulative under Rule 403 that is requires exclusion. *See United States v. Levy*, 594 F. Supp. 2d 427, 439 (S.D.N.Y. 2009), *aff'd*, 385 Fed. Appx. 20 (2d Cir. 2010) ("[I]n sexual assault and child molestation cases, the presumption is that the probative value of the propensity evidence is not outweighed by the risk of unfair prejudice"); *United States v. Vickers*, 708 Fed. Appx. 732, 737 (2d Cir. 2017) (affirming district court's allowance of evidence of other sexual assaults over the

defendant's Rule 403 objection); *Montanez v. City of Syracuse*, No. 6:16-CV-550, 2019 WL 4328872, *5-6 (N.D.N.Y. Sept. 12, 2019).

The Government has stated an intention to call only two unnamed students to present evidence about Defendant's purported sexual abuse which limits the potential for such evidence to become unfairly prejudicial or overly cumulative. The Court also finds that this evidence is not likely to extend an already lengthy trial to an unnecessary degree. Accordingly, the Court grants the Government's motion requesting to present evidence of other sexual abuse alleged by two unnamed students. The Court has carefully considered, and will continue to consider, whether, at some point during the trial, the evidence of prior acts by Defendant becomes so cumulative as to be unfairly prejudicial. If that point is reached, the Court may exercise its discretion to exclude further evidence and testimony regarding the prior acts. The Court will also provide a limiting instruction to the jury about the jury's consideration of uncharged conduct. *See United States v. Donaldson*, 577 Fed. Appx. 63, 65 (2d Cir. 2014) ("[W]e generally do not identify reversible error where . . . the district court minimized any risk of unfair prejudice through limiting instructions").

As for the other alleged non-sexual abuse, the Government argues the evidence is admissible under Rule 404(b)(2) to "demonstrate [D]efendant's modus operandi as well as his intent, plan, and preparation to commit the charged offenses." Dkt. No. 62 at 15. Defendant states that he "has no general objection to the government's attempts to prove his use of sanctions involving no sexual abuse to satisfy the elements of 18 U.S.C. § 2422(a). Accordingly, this aspect of the Government's motion is granted.[3]

---

[3] Because the Court is permitting the Government to introduce evidence of other sexual conduct as propensity evidence and Defendant does not object to the introduction of non-sexual conduct, the Court declines to address the Government's Rule 404(b) alternative argument.

**B. Victim's or Witness's Other Sexual Behavior or Predisposition**

The Government asks the Court to prohibit Defendant from "cross examin[ing]of V-1, V-2, or V-3 (and any witness who testifies to sexual abuse by the defendant) regarding past sexual experiences" as prohibited by Rule 412 and as more prejudicial than probative under Rule 403. Dkt. No. 85 at 5.

Defendant states that he does not intend to offer evidence of V-1, V-2, or V-3's sexual history. *See* Dkt. No. 110 at 1.

Federal Rule of Evidence 412, relating to "Sex-Offense Cases: The Victim's Sexual Behavior or Predisposition" states as follows:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
>> (1) evidence offered to prove that a victim engaged in other sexual behavior; or
>>
>> (2) evidence offered to prove a victim's sexual predisposition.
>
> (b) Exceptions.
>
>> (1) Criminal Cases. The court may admit the following evidence in a criminal case:
>>
>>> (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
>>>
>>> (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>>>
>>> (C) evidence whose exclusion would violate the defendant's constitutional rights.

FED. R. EVID. 412(a), (b).  Rule 412 also contains disclosure requirements.  *See* FED. R. EVID. 412(c).

"Provisions such as Rule 412 not only 'serve the broad purpose of protecting the victims of rape from harassment and embarrassment in court,' but also 'reinforce the trial judge's traditional power to keep inflammatory and distracting evidence from the jury.'"  *United States v. Perez*, No. 20-CR-1982, 2022 WL 1421408, at *2 (2d Cir. May 5, 2022) (quoting *Agard v. Portuondo*, 117 F.3d 696, 703 (2d Cir. 1997), *rev'd on other grounds*, 529 U.S. 61 (2000)).  "The Rule 'aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details.'"  *United States v. Rivera*, 799 F.3d 180, 184 (2d Cir. 2015) (quoting FED. R. EVID. 412 advisory committee's note.) "The exclusion, however, is not absolute." *Id.*

Because Defendant does not intend to introduce evidence that could potentially be violative of Rule 412, the Government's motion *in limine* on this issue is denied as moot.

## C.    Witness's Reputation Evidence

The Government argues that any evidence of FFS former students' character for truthfulness "should be limited to questions for which the defendant has a good faith basis to ask, and the defendant must accept the witness's answer."  Dkt. No. 85 at 6.

Federal Rule of Evidence 608, "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."  FED. R. EVID. 608(a).  The Rule prohibits "extrinsic evidence . . . to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  FED. R. EVID.

608(b).  However, "the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about."  *Id.*

Defendant states he does not intend to introduce extrinsic evidence to prove or attack a witness's character for truthfulness.  See Dkt. No. 110 at 1-2.  Therefore, this aspect of the Government's motion *in limine* is denied as moot.

**D.    Victim's Prior Convictions and Debts**

The Government explains that V-1 and V-3 have a prior misdemeanor conviction.  *See* Dkt. No. 85 at 9.   V-1 was convicted of patronizing a prostitute in 2014, and V-3 was convicted of assault in 2021.  *See id.*  The Government asks that the Court preclude Defendant from inquiring about either of these convictions.  The Government also states that V-3 owes unpaid taxes, interest, and penalties to the Internal Revenue Service.  *See id.* at 11.  The Government asks that Defendant be precluded from cross examining V-3 about his tax debt because it does not concern V-3's truthfulness or untruthfulness and is irrelevant.  *See id.*

Defendant argues that prostitution is a crime involving dishonesty, therefore, V-1's conviction for patronizing a prostitute is admissible.  *See* Dkt. No. 110 at 2.  Defendant also states, "[i]n any case, both convictions of 'V-1' and 'V-3' will be used for other impeachment grounds."  *Id.* at 3 (citing FED. R. EVID. 608, Advisory Committee Notes on 2003 Rules).  He contends that he does not intend to introduce evidence of V-3's tax debts.  *See id.*

Rule 609 of the Federal Rules of Evidence vests broad discretion in the district court to admit or exclude evidence of prior convictions.  *See United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984).  Rule 609 provides as follows:

(a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

    (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

        (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

        (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

    (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

(b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

    (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

    (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

FED. R. EVID. 609(a)-(b).

"The Rule requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *United States v. Estrada*, 430 F.3d 606, 621 (2d Cir. 2005) (quotation

omitted).  In "balancing the probative value against prejudicial effect under [Rule 609], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States. v. Hayes*, 553 F.2d 820, 828 (2d Cir. 1977)) (other citation omitted).  "Although all of these factors are relevant, '[p]rime among them is [the first factor, *i.e.*,] whether the crime, by its nature, is probative of a lack of veracity.'"  *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)).

Defendant has not presented any evidence that V-1's conviction for patronizing a prostitute bears on the witness's propensity for truthfulness.  *See* Dkt. No. 110 at 2.  Defendant's citation to *United States v. Edmonds*, 524 F.2d 62, 67 n.36 (D. D.C. 1975) is unavailing.  First, the entirety of the footnote to which Defendant states as follows:

> The House Committee of the District of Columbia explained the change as follows:
>
> The decision of Pinkney v. United States (Supra note 33) applied the word "crime" in existing section 14-305 to limit impeachment to offenses triable by jury.  This artificial limitation has prevented impeachment by offenses such as false report to the police and soliciting prostitution which manifestly involve dishonesty or false statement.  The rule adopted by the Committee ends this artificial distinction by substituting the word "offense" for the word "crime".  H.R.Rep.No.91-907, 91st Cong., 2d Sess. 62 (1970).

*Edmonds*, 524 F.2d at 67 n.36.  The case does not explain why soliciting prostitution is a crime of dishonesty.  *See id.*  Regardless, V-1 was not convicted of solicitation.

Second, the Second Circuit has expressly stated that "[m]any drug crimes and crimes involving public morality, such as prostitution, may be less probative of veracity." *Estrada*, 430 F.3d at 618; *see also United States v. Lawson*, 683 F.2d 688, 693 (2d Cir. 1982) ("The conviction [for prostitution], if offered solely to show previous dishonesty, might well be inadmissible under Rule 609(a)(2)"). The Second Circuit's commentary is more persuasive to this Court than that from the Federal Circuit.

Although it is unlikely based on Second Circuit precedent that the Court will admit V-1's conviction to prove his character for truthfulness, the Court cannot make a determination until such time as it understands the facts underlying the conviction and the elements of the crime. Defendant also does not explain on what "other impeachment grounds" he intends to admit evidence of V-1 and V-3's convictions. Dkt. No. 110 at 3. As such, the Court make no ruling about the admissibility of those convictions on those vague, unexplained "grounds." Therefore, the Court reserves ruling on this aspect of the Government's motion *in limine* concerning V-1 and V-3's prior convictions. Because Defendant does not intend to introduce evidence of V-3's tax debt, that aspect of the Government's motion is denied as moot.

**E.    Victims' Attendance at Trial**

The Government argues that V-1, V-2, and V-3 should be permitted to attend any portion of the trial that they wish to attend. *See* Dkt. No. 85 at 12. In support of this request, the Government cites Federal Rule of Evidence 615(a)(4), Federal Rule of Criminal Procedure 60(a)(2), and the Crime Victims' Rights Act. *See id.*

Defendant objects to the Government's request, arguing that V-1, V-2, and V-3's accounts of Defendant's alleged sexual abuse has changed over time. *See* Dkt. No. 110 at 3. Defendant states, "[g]iven each accuser's demonstrated history of materially altering their allegations, there

is clear and convincing evidence that their testimony would be materially altered yet again if any one of the accusers is permitted to attend any portion of the trial prior to testifying." *Id.* at 4. Defendant also contends that Crime Victims' Rights Act only permits an alleged victim to be in attendance for the portion of the trial concerning the "set of crimes" he or she is specifically involved in and not that of the other two alleged victims. *Id.* Defendant requests that the Government's motion be denied and that the Court prohibit disclosure of trial testimony to witnesses who are excluded from trial.

Rule 615 states that "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony. Or the court may do so on its own." FED. R. EVID. 615(a). The "rule does not authorize excluding . . . a person authorized by statute to be present." FED. R. EVID. 615(a)(4). As stated by the Government, the Crime Victims' Rights Act states that "[a] crime victim has . . . [t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3); *see also* Dkt. No. 85 at 12. Likewise, Federal Rule of Criminal Procedure 60 states that "[t]he court must not exclude a victim from a public court proceeding involving the crime, unless the court determines by clear and convincing evidence that the victim's testimony would be materially altered if the victim heard other testimony at that proceeding. In determining whether to exclude a victim, the court must make every effort to permit the fullest attendance possible by the victim and must consider reasonable alternatives to exclusion. The reasons for any exclusion must be clearly stated on the record." FED. R. CRIM. P. 60(a)(2).

The Government argues that "there is no evidence that their testimony will be altered if they hear other testimony at the trial." Dkt. No. 85 at 12.

Defendant has not presented clear and convincing evidence that V-1, V-2, or V-3's testimony would be altered by attending trial. Defendant states that each of their "account[s] has been materially different, appearing to be tailored to the perceived needs of the moment." Dkt. No. 110 at 3. Defendant presents no evidence beyond his own statements. This is not clear or convincing evidence that the testimony may be altered. In any event, such purported inconsistencies may be the subject of cross examination.

Defendant's argument concerning the Crime Victims' Rights Act is likewise unpersuasive. "The term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). The Court has been unable to locate case law or statutory authority discussing whether that definition allows a crime victim to attend the entire trial when there are multiple counts in an indictment and the alleged crime victim is only a victim to some of the counts. However, the statute states that a crime victim has "[t]he right not to be excluded from *any* such public court proceeding." 18 U.S.C. § 3771(a)(3) (emphasis added). The statute does not limit the type or duration of a proceeding that a crime victim can attend. Defendant does not contest that V-1, V-2, and V-3, are purportedly "crime victims." As such, they have the right to attend "any" public court proceeding, including the trial. That is, of course, absent clear and convincing evidence that their testimony would be altered by their presence. Without discussion of the issue raised by Defendant, courts have permitted multiple individuals to remain in a courtroom during trial in further of the Act's mandate. *See United States v. Okun*, No. 3:08-CR-132, 2009 WL 790042, *3 (E.D. Va. Mar. 24, 2009) (permitting multiple victim-witnesses to attend the entirety of trial); *United States v. L.M.*, 425 F.

Supp. 2d 948, 957 (N.D. Iowa 2006) (permitting multiple family members who qualify as "crime victims" to attend public proceedings).

Because V-1, V-2, and V-3 constitute "crime victims" under the Crime Victims Rights' Act and any inconsistences in their testimony can be the subject of cross examination, the Court will permit them to attend any part of they trial they wish. This aspect of the Government's motion is granted.

**F.      Expert Testimony of FBI SSA Daniel O'Donnell**

Defendant seeks to preclude the testimony of SSA O'Donnell, or, in the alternative have a *Daubert* hearing to challenge his qualifications as an expert witness. *See* Dkt. No. 92 at 1. Defendant explains that SSA O'Donnell was identified by the Government on December 21, 2024, as a "blind expert to testify in its case-in-chief and/or in rebuttal concerning the matters disclosed in his enclosed summary of anticipated blind expert testimony from a prior case and the attached PowerPoint presentations, which mirror the anticipated testimony here." *Id.* SSA O'Donnell has never spoken to the witnesses in this case or reviewed any statements. *See id.* at 1-2.  Defendant attaches a summary of SSA O'Donnell's expert testimony which concerns "grooming behaviors and dynamics." Dkt. No. 92-1 at 12. Defendant moves for preclusion of the testimony because (1) the Government does not offer legitimate "bases and reasons" for SSA O'Donnell's opinion pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)(iii); (2) his potential testimony is violative of Federal Rule of Evidence 704; and (3) any probative value would be substantially outweighed by the danger of unfair prejudice. *Id.* at 2-4.

The Government argues that the Court should permit SSA O'Donnell to testify because other courts across the country have permitted SSA O'Donnell to testify on the same topic the

Government wishes him to testify about in this case. *See* Dkt. No. 109 at 1-2. The Government also notes that other experts have been permitted to testify about grooming. *See id.* at 2

SSA O'Donnell received a bachelor's degree in psychology and business administration from the University of Montana in 2000; and a master's degree in accounting from the College of William and Mary in 2001. *See* Dkt. No. 92-1 at 5. He became a certified public accountant in 2001 and received a graduate certificate of intelligence studies in counterintelligence from the National Intelligence University in 2023. *See id.* He started working as an FBI Special Agent in 2004. *See id.* at 1. From 2009 to 2016, SSA O'Donnell was assigned to the FBI's Violent Crimes Against Children section. *See id.* He "was responsible for investigating the online sexual exploitation of children and conducting online undercover operations. These duties included the investigation of [child sexual abuse material], individuals and groups engaged in the sexual abuse of children, and the use of anonymous networks to facilitate the sexual exploitation of children." *Id.* In 2016, SSA O'Donnell began working with the Behavioral Analysis Unit, and he became the Unit's Chief in 2021. *See id.* Sometime between 2016 and 2021, he became certified in Behavioral Analysis by the FBI's National Center for the Analysis of Violent Crime. *See id.* at 3.

SSA O'Donnell has attended numerous specialized trainings and presented in seminars and lectures. *See id.* at 9-11. He has testified in twelve federal court cases. *See id.* at 4-5. He has testified as an expert in eight of those cases. *See id.* at 4. In six of the eight cases, he testified as an expert specifically "in grooming behaviors utilized by certain child sex offenders to sexually abuse children." *Id.* None of those six cases were in the Northern District of New York. *See id.*

Federal Rule of Criminal Procedure 16 governs discovery and inspection of discovery materials. The Rule requires a party to disclose its expert witness(es) and provide the following:

> [A] complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
>
> > • the bases and reasons for them;
> >
> > • the witness's qualifications, including a list of all publications authored in the previous 10 years; and
> >
> > • a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

FED. R. CRIM. P. 16(a)(1)(G)(iii).  Federal Rule of Evidence 702 governs testimony of an expert witness and states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.   Rule 704 dictates that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  FED. R. EVID. 704.

In *Daubert*, the Supreme Court's enumerated additional factors for a district court to

consider that can bear on reliability, including the following:

> (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) the technique's "known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

*United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94(1993)). "'*Daubert*'s list of specific factors,'

however, 'neither necessarily nor exclusively applies to all experts or in every case.'" *Id.* (quoting

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). "Rather, the district court's inquiry

into the reliability of expert testimony under Rule 702 is a 'flexible one.'" *Id.* (quoting *Daubert*,

509 U.S. at 594).

"Interpreting Rule 702 in *Daubert*, the Supreme Court rejected the traditional *Frye* rule,

under which courts required that a scientific theory be generally accepted by the scientific

community in order to be admissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256,

265 (2d Cir. 2002) (citing *Daubert*, 509 U.S. at 585-89; *Frye v. United States*, 293 F. 1013, 1014

(D.C. Cir. 1923); *Zuchowicz v. United States*, 140 F.3d 381, 386 n. 5 (2d Cir. 1998)).

"Concluding that the bright-line 'general acceptance' test established in *Frye* was at odds with the

'liberal thrust' of the Federal Rules of Evidence, . . . the Supreme Court has made clear that the

district court has a 'gatekeeping' function under Rule 702—it is charged with 'the task of ensuring

that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"

*Id.* (quotations omitted).

Defendant argues that "there is no generally accepted scientific definition of 'grooming,' and the label is not based on reliable principles and methods." Dkt. No. 92 at 3. Defendant also asserts that because the Government has not provided any proof, data, or statistical information established that the information is scientific, technical, or specialized, the jury cannot know any margin of error. *See id.* Defendant contends that if SSA O'Donnell is permitted to testify, there is a serious risk that the jury will give his testimony undue weight and "blindly credit the accuser's claims." *Id.* at 4. Defendant takes particular issue with SSA O'Donnell's characterization of "grooming" as "an intentional process" because that conclusion would violate Rule 704's prohibition on an expert stating an opinion about a mental state or condition. *Id.*

First, because the Supreme Court expressly rejected the *Frye* test's requirement for generally acceptance in the scientific community as an additional Rule 702 factor, Defendant's argument that that there is no generally accepted scientific definition of "grooming," does not foreclose SSA O'Donnell's testimony. *See* Dkt. No. 92 at 2.

Second, as to the four factors under Rule 702, Courts have concluded that SSA O'Donnell can testify as an expert about grooming because (1) "[s]pecialized training and substantial length of time in the pertinent field go to establishing an expert's qualifications" and "O'Donnell trained formally in psychology and has had years of experience in the specialized field of law enforcement of child sex abuse crimes"; and (2) "O'Donnell's testimony is adequate on both the reliability and the helpfulness *Daubert* prongs. . . . The Tenth Circuit and every other Court of Appeals to consider the issue approves grooming as a subject of expert testimony." *United States v. Bindues*, No. CR 22-0466, 2024 WL 3488301, *21 (D.N.M. July 19, 2024); *see also United States v. Torrez*, No. 1:22-CR-223, Dkt. No. 140 (N.D. Il.).

Several courts across the country have likewise concluded that expert testimony about "grooming" may be admissible in sexual abuse cases. *See United States v. Maxwell*, No. 20-CR-0330, 2021 WL 5283951, *3 (S.D.N.Y. November 11, 2021); *United States v. Halamek*, 5 F.4th 1081, 1088 (9th Cir. 2021); *United States v. Aguilar*, No. 21-CR-0670, 2024 WL 2747330, *13 (D.N.M. May 29, 2024).

Here, SSA O'Donnell has a psychology degree, worked in the FBI's Violent Crimes Against Children section for seven years, and has worked in the FBI's Behavioral Analysis Unit for the past nine years. *See* Dkt. No. 92-1 at 3. He is currently the Unit Chief of the Behavioral Analysis Unit. *See id.* He has attended numerous trainings related to child victims, sex crimes, and behavioral analysis. *See id.* at 9-12. The Government provided the Court with the transcript from SSA O'Donnell's *Daubert* hearing in *United States v. Bindues*. *See* Dkt. No. 109-1 (citing *Bindues*, 2024 WL 3488301, at *21). During that hearing, SSA O'Donnell testified that he works in the Behavioral Analysis Unit specifically related to Crimes Against Children. *See id.* at 6. When he first started with the Behavioral Analysis Unit, he received 400 to 500 hours of training from Unit personnel, psychiatrists, medical providers, and forensic psychologists. *See id.* at 11. He has been the primary case agent or co-agent on dozens of child sex abuse cases and has assisted in "hundreds of additional cases." *Id.* at 13. SSA O'Donnell is a certified behavioral analyst with the FBI and teaches others on topics related to crimes against children. *See id.* at 16. During the hearing, SSA O'Donnell testified to the definition of "grooming" that is used within the FBI, but acknowledged that within the research on the topic, the definition can "vary slightly." *See id.* at 22- 24. He stated, based on his training and experience, that he is not aware of any scholarship concluding that the concept of "grooming" is fake. *Id.* at 24. SSA O'Donnell proceeded to testify about "clusters of behaviors" that can occur in "stages" of the grooming

process. *Id.* at 24-40. He stated "that grooming itself, and the concept of grooming and the clusters of behaviors that are common to these events, my understanding is that it's fairly consistent throughout the research that I'm aware of." *Id.* at 45.

On cross examination, SSA O'Donnell explained the purpose of his testimony as follows:

> My experience, and the purpose of my testimony today is to explain behaviors that are commonly used among certain child sex offenders to engage a child in sexual activity. I'm not using that in a predictive fashion of saying that if you have three or four types of behaviors, that that predicts whether or not somebody may become a child sex offender or engage in grooming. I'm simply discussing topics, that based off of my decade and a half worth of experience and communicating with offenders and reviewing documents and reviewing guides that have been written by offenders for the purpose of other offenders, that these processes and these behaviors I've described are very common to that process.

*Id.* at 57.

Based on SSA O'Donnell's education and experiences as well as the testimony he presented in a *Daubert* hearing concerning the precise issues raised in this case, the Court concludes that SSA O'Donnell is qualified to testify about grooming. The Court agrees with the reasoning set forth in *Bindues*, as well as the cases cited by *Bindues*, which have concluded that grooming is an appropriate subject of expert testimony and that SSA O'Donnell is qualified to testify on the topic. Defendant's argument that there is no universal definition for grooming, *see* Dkt. No. 92 at 3, has been repeatedly rejected by federal courts, and Defendant has not presented a single case concluding otherwise. As explained, the Supreme Court has rejected *Frye*'s general acceptance rule and the Court finds that "there is, in fact, general agreement that grooming identifies a cluster of behaviors whereby a sexual abuser attempts to facilitate the victim's abuse." *Bindues*, 2024 WL 3488301, at *29 (collecting secondary sources that have discussed definitions

of grooming similar to that which had been presented by SSA O'Donnell during the *Daubert*

hearing).

Defendant also argues that there is no "margin of error" for SSA O'Donnell's purported

testimony.  Dkt. No. 92 at 3.  The court in *Bindues* eloquently rejected this argument, stating as

follows:

> Bindues' lack-of-testability arguments against the reliability of
> O'Donnell's grooming testimony implicate equally the reliability of
> all expert testimony about criminal modus operandi, as well as the
> reliability of expert testimony about typical crime victim behaviors.
> Insofar, therefore, as criminal modus operandi testimony and crime
> victim behavior testimony are proper Daubert subjects, Bindues'
> reliability arguments cannot succeed against O'Donnell's testimony
> about grooming.

*Bindues*, 2024 WL 3488301, at *31; *see also United States v. Maxwell*, No. 20-CR-330, 2021 WL

5283951, *2 (S.D.N.Y. Nov. 11, 2021) ("Though the Second Circuit has not ruled on the

admissibility of a grooming expert, it has previously recognized the academic literature on

grooming to facilitate sexual abuse of minors").

Next, it is true that Rule 704(b) "recognizes that expert testimony concerning a defendant's

mental state poses a uniquely heightened danger of intruding on the jury's function."  *United*

*States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993).  "Clearly, Rule 704(b) does not

prohibit all expert testimony that gives rise to an inference concerning a defendant's mental state. .

. .  The plain language of the rule, however, means that the expert cannot expressly 'state the

inference,' but must leave the inference, however obvious, for the jury to draw."  *Id.* (citations

omitted); *see also Maxwell*, 2021 WL 5283951, at *5 ("Dr. Rocchio's core opinions about

grooming, however, remain admissible under the Rule 702 and *Daubert* standard and remain

relevant pursuant to Rule 401 and not unduly prejudicial.  As discussed, the jury may extrapolate

from the opinions that the presence of a third party creates the atmosphere of trust that can facilitate grooming").  SSA O'Donnell will not be permitted to testify about Defendant's mental state.

As to Defendant's Rule 403 argument, the Court concludes that the expert testimony is not unduly prejudicial because SSA O'Donnell has not reviewed case information and intends to testify only generally as to the concepts and conduct related to grooming.  *See* Dkt. No. 92 at 1.

Accordingly, Defendant's motion *in limine* requesting to preclude SSA O'Donnell's expert testimony is denied.  As to Defendant's request to *voir dire* SSA O'Donnell, the Court denies the request at this time.  Defendant should review the *Daubert* hearing transcript from *Bindues*.  If Defendant believes that additional questions need to be asked of SSA O'Donnell to sufficiently *voir dire* his expert testimony, Defendant shall file a letter with the Court explaining what issues were left unaddressed by that *Daubert* hearing.  The Court will then determine whether a *Daubert* hearing is necessary in this case.

## G.      Testimony of Jim Murray

The Government intends to call Jim Murray to testify about a statement Defendant purportedly made to Jan Cheripko.  *See* Dkt. No. 93 at 1.  Supposedly, Mr. Murray overheard Defendant tell Mr. Cheripko he "had an inappropriate sexual relationship with another student." *Id.*  Defendant argues that Mr. Murray's contention is fabricated and should be excluded under Rules 403 and 404(b).  *See id.* at 3.  This is because prior to being questioned by the FBI in 2022, Mr. Cheripko only knew about "a claim that Mr. Geer molested two boys while they slept in the school dorms in the 1990s." *Id.* at 2.  Defendant contends that it was through the interview with the FBI that Mr. Cheripko learned of a separate claim that Defendant engaged in a relationship with a male student during a trip to Toronto.  *See id.* at 2-3.  Therefore, any contention that Mr.

Murray heard a statement about V-1, V-2, or V-3 is false. *See id.* Defendant argues that eliciting any testimony from Mr. Murray about what Defendant purportedly told Mr. Cheripko is inappropriate because Defendant cannot cross examine Mr. Cheripko on the issue and the Government has not provided any details as to the "inappropriate sexual relationship" that Defendant admitted to. *See id.* at 1-3.

Mr. Cheripko testified during a deposition on February 9, 2024, related to a civil law suit. *See* Dkt. No. 93-1; *see also* Dkt. No. 62-4. Mr. Cheripko was asked about a "currently open" investigation against Defendant. Dkt. No. 93-1 at 2. He was asked to discuss only "what [he] learned outside of the [FBI] investigation." *Id.* Mr. Cheripko testified that "the date of the incident involved was in the 1990s it was before I joined the school full-time. That is the incident I am aware of. The FBI is investigating a different incident that occurred shortly after I had joined the school full-time and that involves a particular student. The incident I am referencing involves some other students." Dkt. No. 93-1 at 5. Mr. Cheripko stated that Defendant "reported it about himself" that Defendant had molested "some male students" while they were sleeping. *Id.* at 6-7. Mr. Cheripko explained that the FBI was "investigating one particular incident. When they asked me whether or not I knew of anything else that is when I told them what I just told you." *Id.* at 8. He confirmed that the FBI was investigating "something separate" than molesting the two boys while they were sleeping. *Id.* at 9. Mr. Cheripko testified that Defendant told him "the same time he had told the administration some time in the 1990s." *Id.* He clarified that the "other incident" "had to do with an accusation by a student during a trip to Toronto when the choir was performing up there. . . . [The allegation was t]hat it was sexual. The answer is I don't know actually. It had to do with a sexual nature but I don't know what it was." *Id.* at 11. Mr. Cheripko said he learned of the allegation "[t]hrough the FBI." *Id.* Counsel asked Mr. Cheripko

if anyone else was present during his and Defendant's conversation, and Mr. Cheripko responded, "Not privy to the conversation. There were people that were around but nobody was overhearing our conversation." *Id.* at 19.

The Government states it "is offering Murray's account of what he overheard as the defendant's confession to sexual abusing V-2." Dkt. No. 109 at 3. V-2 is a female. *See id.* The Government argues that Mr. Murray's testimony is admissible under Rule 801(d)(2)(A). *See id.*[4]

The Government is correct in that numerous courts have permitted a defendant's statement, which was overheard by a witness, to be admitted "against [the defendant] as admissions pursuant to Fed. R. Evid. 801(d)(2)(A)." *United States v. Johnson*, 469 F. Supp. 3d 193, 213 (S.D.N.Y. 2019); *see also United States v. Bodian*, 99 F.3d 400 (2d Cir. 1995); *Ciacciarella v. Bronko*, 613 F. Supp. 2d 262, 267 (D. Conn. 2009). The Court agrees with this argument. The Government seeks to introduce the testimony which is a statement made by Defendant and is, therefore, admissible under Rule 801(d)(2)(A).[5]

However, Defendant argues that the testimony should be excluded under Rule 403 because any attempt to discredit Mr. Murray's statements would open the door to a trial within a trial on other issues. *See* Dkt. No. 93 at 4. One specific issue is "the discrepancies between Cheripko's and Murray's accounts" of Defendant's statement. *Id.* Mr. Cheripko testified that Defendant told him about molesting two boys, but Mr. Murray intends to testify about

---

[4] The Government notes that Mr. Cheripko is deceased, and it attempted to obtain Mr. Cheripko's testimony via a video deposition but was unable to do so before Mr. Cheripko's death. *See* Dkt. No. 109 at 4.

[5] Defendant discusses Federal Rule of Evidence 404(b), which requires a party to give the opposing side "reasonable notice of any" evidence of other crimes, wrongs, or acts. FED. R. EVID. 404(b)(3)(A). The notice is required "so that the defendant has a fair opportunity to meet it." *Id.* The Government argues that it was not required to give Defendant notice under Rule 404(b) because the testimony is not evidence of a "crime, wrong or act" but is evidence of one of the charged crimes—the sexual abuse of V-2. Dkt. No. 109 at 7.

overhearing a statement concerning a "sexual relationship" which is purportedly in reference to V-2, a female. Dkt. No. 109 at 5-6; *see also* Dkt. No. 93-1 at 5-11.

The Government contends "there is no reason to credit Cheripko's recounting of the defendant's confession over Murray's. If they are talking about the same event, none of the purported inconsistencies show that Murray is obviously lying. Rather, they reflect normal differences that arise when witnesses remember an important event from several years ago." Dkt. No. 109 at 5. The Government agrees, however, that it is possible that Mr. Murray and Mr. Cheripko's recollections differ. *See id.* at 6. The Government explains that such discrepancy "is plausible because the government will introduce evidence that the defendant sexually assaulted multiple students at FFS over a period of years. Murray recalls hearing the defendant confess in 2001 to an inappropriate sexual relationship with another student at FFS in Family 1, which would make sense if the defendant previously confessed to Cheripko in the late 1990's to molesting two boys." *Id.* The Government argue that it should be free to argue that Defendant's statement overheard by Mr. Murray was in reference to V-2 and that "the government cannot offer Murray's account of what the defendant said as evidence of a confession to the sexual molestation of two boys (Cheripko's deposition testimony) because the government has no way of introducing that evidence, despite its attempt to preserve Cher[]i[p]ko's testimony for this trial." *Id.* at 7.

Mr. Murray's purported testimony is prejudicial. Whether it is substantially more prejudicial than probative under Rule 403 will need to be determined at the time of trial. Defendant cannot call Mr. Cheripko to challenge Mr. Murray's recollection because of Mr. Cheripko's death. The Government states that it has no way to introduce Mr. Cheripko's deposition testimony into evidence, which precludes another avenue for the Defendant to

challenge Mr. Murray's recollection.  Delving into the specifics of whether Mr. Murray overheard Defendant make a statement that was related to V-2 or other unnamed students might also confuse the issues that are before the jury.  The Government contends that it first learned about what Mr. Murray "overheard" in a "trial preparation session."  Dkt. No. 109 at 6.  There is no indication that Mr. Murray has ever previously testified or disclosed this information.  At this juncture, it does not appear that Defendant will have a meaningful opportunity to cross examine Mr. Murray about a statement he "overheard."  Therefore, the Court will reserve ruling on this aspect of Defendant's motion *in limine* until such time as the Court hears the other evidence presented at trial and can determine the prejudicial versus probative value of Mr. Murray's testimony.

**H.**     **Defendant's Request to Ask Leading Questions of Liz Ianelli**

Defendant intends to call Liz Ianelli as a witness at trial.  *See* Dkt. No. 94.  Defendant contends that Ms. Ianelli, "credits herself with spearheading the campaign against . . . FFS . . . and Mr. Geer.  She recruited potential victims of FFS, advised them on how to pursue legal cases against the school, pushed theories that would attract the attention of federal law enforcement, and secretly recorded Mr. Geer in an effort to elicit a confession."  *Id.* at 1.  Defendant notes that Ms. Ianelli wrote a book detailing her experience at FFS, referring to Defendant as "The Pedophile" and she wrote a letter in support of his detention earlier in this case.  *Id.*  Because of this, Defendant requests that Ms. Ianelli be declared a hostile witness which would permit counsel to cross-examine her on direct examination.  *See id.* at 2.

The Government argues that the Court should not deem Ms. Ianelli to be a hostile witness until such time at trial that she exhibits hostility toward Defendant.  *See* Dkt. No. 109 at 9.  The Government contends that the Defendant's motion "fails to demonstrate why leading questions are necessary to 'develop' her testimony pursuant to Rule 611(c)."  *Id.* at 8.

The Federal Rules of Evidence generally discourage the use of leading questions on direct examination "except as necessary to develop the witness's testimony." FED. R. EVID. 611(c). But Rule 611's "preference for non-leading questions is only precatory." *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, at 757 (2d Cir. 2004); *see also United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983) (explaining that Rule 611(c)'s "should not" language are just "words of suggestion, not command"). The Rule recognizes that leading questions on direct examination might be appropriate "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." FED. R. EVID. 611(c)(2). "The Advisory Committee Notes to Rule 611(c) state that the classification of questions as leading and witnesses as hostile 'clearly falls within the area of control by the judge over the mode and order of interrogation and presentation and accordingly is phrased in words of suggestion rather than command.'" *McCaffrey v. City of New York*, No. 11-CV-1636, 2013 WL 494025, *7 (S.D.N.Y. Feb. 7, 2013) (quoting Fed. R. Civ. P. 611(c) advisory committee note 1972). "Thus, 'trial judges are afforded a large degree of discretion in overseeing the examination of witnesses' and making determinations that witnesses are hostile." *Id.* (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004)).

A court in the District of Connecticut has noted that a hostile witness may be someone "who sympathize[s] with the opponent's case." *Bencosme v. Metro-N. R.R. Co.*, No. 3:22-CV-01430, 2024 WL 4198325, *3 (D. Conn. Sept. 16, 2024) (citing *United States v. Wiley*, 846 F.2d 150, 156 (2d Cir. 1988)). However, the court's reliance on the Second Circuit's decision in *Wiley* is unpersuasive. In *Wiley*, the Second Circuit affirmed the district court's decision to grant a request to question a witness as hostile after the witness "was unresponsive and deviated from previous statements." *Wiley*, 846 F.2d at 156. The *Wiley* case says nothing about when a witness

"sympathize[s] with the opponent's case." *Bencosme*, 2024 WL 4198325, at *3. If sympathy was all that was required to be deemed a "hostile" witness, quite frankly, nearly every witness in a case could be considered hostile against one side or another. However, if a witness is so sympathetic to one side of the case that he or she becomes unresponsive, rude, or combative during questioning, then a hostile witness determination might be appropriate.

Based on Defendant's proffer, it appears that Ms. Ianelli sympathizes with the Government's case and has strong opinions about Defendant's guilt. However, the Court will not deem Ms. Ianelli to be a hostile witness at this time because the Defendant has not presented evidence that he will be unable to "develop the witness's testimony." FED. R. EVID. 611(c). Therefore, Defendant's motion *in limine* concerning this issue is denied. Of course, during Ms. Ianelli's testimony, should she become hostile, the Court may alter this determination.

**I.  Referring to the Complaining Witnesses or Accusers as "Victims"**

Defendant asks that the Government be precluded "from referring to any individual accusing [Defendant] of abuse as a 'victim.' Instead, counsel respectfully requests that each accuser be referred to by name." Dkt. No. 95 at 1. Defendant argues that using the term "victim" would undermine the presumption of innocence in the case. *See id.*

In response, the Government notes that it does not intend to use the word "victim" during its case-in-chief but asks that it be permitted to use the term in opening and closing statements. *See* Dkt. No. 109 at 9. The Government also requests, in the header of its argument, that its expert be permitted to use the term "victim" generally. *See id.*

The Court agrees with Defendant that because he intends to present a defense that the alleged crimes did not occur, reference to the individuals accusing Defendant of a crime as "victims" is unduly prejudicial. However, as explained by the Government, it bears the burden to

prove the alleged crimes and is entitled to present its theory of the case during opening and closing statements. *See* Dkt. No. 109 at 9-10. The jury will also be instructed that arguments by counsel do not constitute evidence. As such, the Government may refer to the individuals as "victims" in its opening and closing statements but is ordered to refrain from doing so in the presence of the jury at all other points in the trial. *See United States v. Ray*, No. 20-CR-110, 2022 WL 558146, *25 (S.D.N.Y. Feb. 24, 2022) ("Unless the defense opens the door, the Government is ordered not to refer, in the presence of the jury, to the alleged victims as victims outside of its jury addresses") (collecting cases); *United States v. Clanton*, No. 23-CR-328, 2024 WL 1072050, *17 (E.D.N.Y. Mar. 12, 2024) (denying motion because the defendant "has been charged with a number of crimes for which there are identifiable victims" and has not indicated that he seeks to assert a defense based on the assertion that the alleged victims are not in fact victims of a crime); *United States v. Gasperini*, No. 16-CR-441, 2017 WL 3140366, *7 (E.D.N.Y. July 21, 2017), *aff'd*, 729 Fed. Appx. 112 (2d Cir. 2018).

SSA O'Donnell may also testify generally about individuals who could be victims of specific grooming tactics, but he is not permitted to refer to any individuals associated with this case as "victims." Accordingly, Defendant's motion is granted in part.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that the Government's motions *in limine* (Dkt. Nos. 62, 85) are **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendant's motions *in limine* (Dkt. Nos. 92, 93, 94, 95) are **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 10, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge